# REMAND / JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | EDCV 21-898-GW-SHKx | Date | July 1, 2021 |
|---|---|---|---|
| Title | *Doreen Acra, et al. v. California Magnolia Convalescent Hospital, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | Terri A. Hourigan | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Sylvia Panosian | Amber L. Roller |

**PROCEEDINGS:** **TELEPHONIC HEARING ON DEFENDANT NBCUNIVERSAL MEDIA, LLC'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT OF CLAIMS [22]**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. The Court will remand the matter to state court for lack of subject matter jurisdiction. Magnolia's motion to dismiss is denied.

:  25

Initials of Preparer  JG

*Doreen Acra et al v. California Magnolia Convalescent Hospital, Inc. et al*; Case No. 5:21-cv-00898-GW-(SHKx); Tentative Ruling on Motion to Dismiss

## I. Background

### A. Procedural Background

On March 24, 2021, Plaintiffs Doreen Acra and Pamela Archuleta, individually and as heirs and successors-in-interest to Billy Acra, filed a state court complaint against Defendants California Magnolia Convalescent Hospital, Inc., doing business as Magnolia Rehabilitation & Nursing Center ("Magnolia") and Vibra Hospital of San Bernardino, LLC, doing business as Ballard Rehabilitation Hospital ("Ballard"). *See* Complaint, Docket No. 1-2. The Complaint alleges three causes of action: (1) violations of the California Elder Abuse and Dependent Adult Civil Protection Act (Cal. Welf. & Inst. Code §§ 15600 *et seq.*); (2) negligence; and (3) wrongful death. *See id.* On May 21, 2021, Defendant Magnolia removed the case to federal court, arguing the following: (1) that federal question jurisdiction existed due to complete preemption under the Public Readiness and Emergency Preparedness Act ("PREP Act"); (2) that federal question jurisdiction existed because the case raised substantial federal issues; and (3) that removal also was proper under 28 U.S.C. § 1442(a)(1), the federal officer removal statute. *See* Notice of Removal, Docket No. 1 at 3, 17, 19.[1]

Before the Court is Magnolia's motion to dismiss Plaintiffs' Complaint ("Motion"). *See* Docket No. 11. On June 28, 2021, Plaintiffs filed what appears to be a combined motion to remand the action back to state court and a brief in opposition to Magnolia's motion to dismiss ("Opp."). *See* Docket No. 15.[2]

### B. Factual Allegations

According to the Complaint, Decedent Billy Acra ("Decedent") was a 79-year-old

---

[1] According to the Notice of Removal, Defendant Ballard did not object to removing the case to federal court. *See* Notice of Removal ¶ 72. Ballard has not appeared in this matter, post-removal. *See generally* Docket.

[2] This district's Local Rules require that a written opposition be filed "not later than twenty-one (21) days before the date designated for the hearing of the motion." C.D. Cal. L.R. 7-9. Because the hearing on Magnolia's motion to dismiss is scheduled for July 1, 2021, any written response by Plaintiffs was due on June 10, 2021. As such, Plaintiffs' opposition brief – filed three days before the hearing – was untimely. Nevertheless, the Court has an obligation to ensure that subject matter jurisdiction exists before proceeding, "even in the absence of a challenge from any party." *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Additionally, as the Court will explain *infra*, the Court would remand the matter for lack of subject matter jurisdiction and would deny Magnolia's motion to dismiss as moot. The Court therefore need not consider Plaintiffs' arguments in opposition to the motion to dismiss.

dependent adult "who had physical and mental limitations that restricted his ability to carry out normal activities of daily living." *See* Complaint ¶ 12. Plaintiff Doreen Acra is Decedent's wife and successor-in-interest. *See id.* ¶ 8. Plaintiff Pamela Archuleta ("Archuleta") is Decedent's stepdaughter. *See id.* ¶ 9. Defendants Magnolia and Ballard are skilled nursing care facilities located in Riverside, California and San Bernardino, California, respectively. *See id.* ¶¶ 13-15. During Decedent's stay at both facilities, Defendants purportedly were aware that Decedent "was in a compromised physical state," required close supervision and medical attention, and had a medical history of hypertension and post-cerebrovascular accident status, which limited his mobility and made him dependent on their staff for daily living activities. *See id.* ¶¶ 20-21, 45-46.

Plaintiffs allege that on or about March 25, 2020, Decedent was admitted to Magnolia for physical therapy and rehabilitation following a stroke. *See id.* ¶ 22. Magnolia purportedly failed to implement effective infection control policies throughout the facility and failed to provide for Decedent's health and safety. *See id.* ¶¶ 24-25. As a result, Magnolia allegedly deprived Decedent of his necessary therapy and caused Decedent to develop preventable skin breakdowns, suffer dehydration, and contract COVID-19. *See id.* On April 7, 2020 and April 8, 2020, Magnolia nursing staff called Archuleta and requested that she pick Decedent up from the facility as soon as possible. *See id.* ¶¶ 30-31. When Decedent was discharged from Magnolia on April 8, 2020, he told his family he "received very little water during the final five days at his residency at Magnolia due to staff no longer coming to work." *See id.* ¶ 31. He also stated, *inter alia*, that during the entirety of his stay, the staff only brushed his teeth once and never got him up to use a bedside commode or to use the restroom. *See id.* ¶¶ 31-32.

On or about April 9, 2020, Decedent allegedly was admitted to Ballard for the same reasons as he was admitted to Magnolia: physical therapy and rehabilitation following a stroke. *See id.* ¶ 47. Ballard purportedly failed to implement effective infection control policies throughout the facility and failed to provide for Decedent's health and safety. *See id.* ¶¶ 49-69. As a result, Decedent contracted COVID-19, developed sepsis, pneumonia, and suffered acute chronic hypoxic respiratory failure. *See id.* ¶ 49. Ballard also allegedly failed to employ an adequate number of qualified personnel at the facility throughout the course of Decedent's residency, which also caused Decedent's ailments. *See id.* ¶¶ 70-71.

Plaintiffs allege that on or about April 14, 2020, Decedent began experiencing COVID-

19 symptoms. *See id.* ¶ 72. Decedent was admitted to the hospital on April 17, 2020 due to altered mental status, fever, and chills. *See id.* ¶ 73. He tested positive for COVID-19, was transferred to the Intensive Care Unit, and suffered an acute kidney injury and septic shock. *See id.* ¶¶ 74-75. Decedent passed away on April 28, 2020. *See id.* ¶ 76. His death certificate lists acute chronic hypoxic respiratory failure, septic shock, pneumonia, and COVID-19 as his causes of death, and acute kidney injury, cerebrovascular accident, deep vein thrombosis, and limb ischemia as other significant contributing factors to his death. *See id.*

### C. Request for Judicial Notice

Magnolia requests that the Court take judicial notice of 34 documents. *See* Request for Judicial Notice in Support of Motion to Dismiss ("RJN"), Docket No. 12 (referencing exhibits attached to Docket No. 5). Plaintiffs have not opposed this request or questioned the authenticity of any of the documents. *See generally* Opp.

The Court may judicially notice facts that are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court also may take judicial notice of court filings and other matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citation omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts may consider "matters of which a court may take judicial notice" when ruling on Rule 12(b)(6) motions to dismiss). The Court will consider the following exhibits attached to Magnolia's RJN, which are court filings or other matters of public record: 1-5, 9, 30, 32-34. *See* Docket No. 5, 12. The Court does not rely on the remaining documents in reaching its ruling on the instant motion and denies the request for judicial notice as to those exhibits.

## II. Legal Standard

Magnolia brings its motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) and/or 12(b)(6). *See* Motion at 2. However, as a preliminary matter, the Court must ensure that subject matter jurisdiction exists before proceeding, "even in the absence of a challenge from any party." *See Arbaugh*, 546 U.S. 500, 514 (2006); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004).

Federal courts operate under the presumption that they do not have jurisdiction over state-law causes of action. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

"The defendant bears the burden of establishing that removal is proper" and removal statutes are "strictly construed against removal jurisdiction." *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *see also Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992) ("[J]urisdiction must be rejected if there is any doubt as to the right of removal.").

Federal courts have original jurisdiction over all civil actions that arise under federal law. 28 U.S.C. § 1331. A case may arise under federal law where "it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 13 (1983); *see also Armstrong v. N. Mariana Islands*, 576 F.3d 950, 955 (9th Cir. 2009). "When a claim can be supported by alternative and independent theories – one of which is a state law theory and one of which is a federal law theory – federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996).

The presence of federal question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). This rule makes a plaintiff the master of his complaint: it allows him to avoid federal jurisdiction by relying exclusively on state law. It is "settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.*, 463 U.S. at 13-14.

There are, however, cases where the well-pleaded complaint rule gives way to "complete preemption" by federal statute. The United States Supreme Court has concluded that the preemptive force of some federal statutes is so strong that they "completely pre-empt" an area of state law. *See Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). In those cases, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law. *See Franchise Tax Bd.*, 463 U.S. at 24.

### III. Discussion

Magnolia removed the instant action to federal court pursuant the PREP Act, which Magnolia contends is a complete preemption statute giving rise to federal question jurisdiction. *See* Notice of Removal at 3. Magnolia also removed the case on the basis that Plaintiffs' claims

4

raised substantial federal issues. *See id.* at 17. Finally, Magnolia contended that removal was proper under 28 U.S.C. § 1442(a)(1), the federal officer removal statute. *See id.* at 19.

### A. Federal Question Jurisdiction

1. <u>The PREP Act</u>

The PREP Act is invoked when the Secretary of the Department of Health and Human Services ("HHS") issues a declaration determining that a disease or other health condition constitutes an ongoing public health emergency. 42 U.S.C. § 247d-6d(b). If the Secretary determines that there is such an emergency, he "may make a declaration, through publication in the Federal Register, recommending . . . the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures, and stating that [42 U.S.C. § 247d-6d(a)] is in effect with respect to the activities so recommended." *Id.* The Secretary issued a declaration for the ongoing COVID-19 pandemic on March 10, 2020, and has issued seven subsequent amendments thereto. *See* RJN Exh. 2-5, 30, 33-34.

Once invoked, the PREP Act provides that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). This immunity is broad. It applies to "any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure." 42 U.S.C. § 247d-6d(a)(2)(B).

"Covered countermeasures" under the PREP Act cover drugs, biological products, or devices that are designed to diagnose, mitigate, prevent, or treat harm from the public health emergency. *Id.* at § 247d-6d(i)(1), (7). The HSS Secretary's COVID-19 Declaration more specifically defines covered countermeasures as "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19 . . . or any device used in the administration of any such product, and all components and constituent materials of any such product." RJN Exh. 2 at 40. "Administration" and "use" are not defined in the act, but the HSS Secretary's COVID-19 Declaration states that "administration" of covered countermeasures "means physical provision of the countermeasures

5

to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for purpose of distributing and dispensing countermeasures." *Id.*

The PREP Act preempts state laws that create different standards regarding covered countermeasures:

> During the effective period of a declaration under subsection (b), or at any time with respect to conduct undertaken in accordance with such declaration, no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that—
>> (A) is different from, or is in conflict with, any requirement applicable under this section; and
>
>> (B) relates to the design, development, clinical testing or investigation, formulation, manufacture, distribution, sale, donation, purchase, marketing, promotion, packaging, labeling, licensing, use, any other aspect of safety or efficacy, or the prescribing, dispensing, or administration by qualified persons of the covered countermeasure, or to any matter included in a requirement applicable to the covered countermeasure under this section or any other provision of this chapter, or under the Federal Food, Drug, and Cosmetic Act.

42 U.S.C. § 247d-6d(b)(8). In sum, the PREP Act creates immunity for all claims of loss causally connected to the administration or use of covered countermeasures, which are certain drugs, biological products, or devices.

### 2. Whether the PREP Act Completely Preempts Plaintiffs' Claims

Magnolia argues that the PREP Act completely preempts Plaintiffs' claims, all of which are state law causes of action. *See* Notice of Removal at 3-13; Motion at 20-21. "[C]omplete preemption for purposes of federal jurisdiction under § 1331 exists when Congress: (1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action." *City of Oakland v. BP PLC*, 969 F.3d 895, 906 (9th Cir. 2020) (citing *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018)). Essentially, Congress must intend for the statute to "provide the exclusive cause of action." *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 9 (2003).

"[M]any courts have held [that] the PREP Act does not prevent plaintiffs from bringing state law claims based on an alleged failure to use covered countermeasures." *See Stone v. Long Beach Healthcare Ctr., LLC*, No. CV 21-326-JFW (PVCx), 2021 WL 1163572, at *5 (C.D. Cal. Mar. 26, 2021) (citing cases which "plainly hold that the PREP Act does not wholly displace

state law claims that implicate healthcare entities and COVID-19" (quotation omitted)); *see also Golbad v. GHC of Canoga Park*, No. 21-CV-01967-ODW (PDx), 2021 WL 1753624, at *2 (C.D. Cal. May 4, 2021) ("And, simply put, the PREP Act does not satisfy the Ninth Circuit's two-part complete preemption test."); *Padilla v. Brookfield Healthcare Ctr.*, No. CV 21-2062-DMG (ASx), 2021 WL 1549689, at *4 (C.D. Cal. Apr. 19, 2021) (collecting cases and concluding that "[n]early every other federal court addressing the issue of complete preemption has found that the PREP Act is not a statute with complete preemptive effect"); *Riggs v. Country Manor La Mesa Healthcare Ctr.*, No. 21-CV-331-CAB-DEB, 2021 WL 2103017, at *2 (S.D. Cal. May 25, 2021) ("Although this exact issue does not appear to have been considered by an appellate court, district courts in the Ninth Circuit and around the country have consistently held that the PREP Act does not satisfy [the] requirements for complete preemption.").

Magnolia cites one case within the Ninth Circuit finding that the PREP Act is a complete preemption statute: *Garcia v. Welltower OpCo Grp. LLC*, No. SACV 20-02250-JVS (KESx), 2021 WL 492581, at *7 (C.D. Cal. Feb. 10, 2021). *See* Notice of Removal ¶¶ 27-28; Motion at 17-18. The court in *Garcia* deferred to the HHS Office of the General Counsel's ("OGC's") January 8, 2021 Advisory Opinion, which posits that the PREP Act is a complete preemption statute. *See Garcia*, 2021 WL 492581, at *7; RJN Exh. 9 at 85. Specifically, the Advisory Opinion states: "The *sine qua non* of a statute that completely preempts is that it establishes either a federal cause of action, administrative or judicial, as the only viable claim or vests exclusive jurisdiction in a federal court. The PREP Act does both." *See* RJN Exh. 9 at 85. A federal agency's interpretations of a statute in the form of opinion letters lack the force of law and are only "entitled to respect" to the extent they have the "power to persuade." *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). The Court would agree with the other district courts holding that the January 8, 2021 Advisory Opinion is not persuasive and therefore "entitled to minimal respect" because, *inter alia*, it does "not cite any legal support for the proposition that an exclusive federal administrative remedy is sufficient for complete preemption." *See Padilla*, 2021 WL 1549689, at *4-5 (quotation omitted); *see also Smith v. Colonial Care Ctr., Inc.*, No. 2:21-cv-00494-RGK-PD, 2021 WL 1087284, at *6 (C.D. Cal. Mar. 19, 2021) (same); *Stone*, 2021 WL 1163572, at *6 (concluding that the "HHS Secretary's and the OGC's interpretations of this Court's jurisdiction under the PREP Act are not entitled to deference and lack the 'power to persuade'").

Moreover, as other courts within this district have noted, *Garcia* "did not consider the Ninth Circuit's two-part complete preemption test." *See Golbad*, 2021 WL 1753624, at *3; *see also Estate of McCalebb v. AG Lynwood, LLC*, No. 2:20-cv-09746-SB-PVC, 2021 WL 911951, at *4 (C.D. Cal. Mar. 1, 2021) (court in *Garcia* deferred to the January 8, 2021 Advisory Opinion "without analyzing the Ninth Circuit's two-pronged test"). As such, the Court would decline to hold that the PREP Act is one of the rare statutes to which complete preemption applies. *See Hansen*, 902 F.3d at 1057 (the Ninth Circuit has observed that complete preemption is "rare"); *City of Oakland*, 969 F.3d at 905-06 (the Supreme Court has identified only three statutes that meet the complete preemption criteria).[3]

### 3. Whether Plaintiffs' Claims Raise Substantial Federal Issues

Magnolia also contends that federal question jurisdiction exists because Plaintiffs' claims raise "substantial federal issues establishing federal question jurisdiction," *i.e.*, "the extent to which the broad immunities afforded under the PREP Act apply to Defendant's conduct." *See* Notice of Removal at 17. Magnolia relies on the HHS Secretary's Fourth Amended Declaration, which states, in relevant part:

> COVID-19 is a global challenge that requires a whole-of-nation response. There are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities. The world is facing an unprecedented pandemic. To effectively respond, there must be a more consistent pathway for Covered Persons to manufacture, distribute, administer or used Covered Countermeasures across the nation and the world. Thus, there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having a uniform interpretation of the PREP Act.

*See id.* at 8-9; RJN Exh. 5 at 58.

Under *Grable*, state law claims can invoke federal question jurisdiction if the claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state

---
[3] Magnolia also cites a Western District of Louisiana case, *Rachal v. Natchitoches Nursing & Rehabilitation Ctr., LLC*, No. 1:21-cv-00334 (W.D. La. Apr. 30, 2020) for the proposition that the PREP Act completely preempts Plaintiffs' state law claims. *See* Notice of Removal at 10-13. That decision does not bind this Court.

judicial responsibilities." 545 U.S. at 314. The Court would conclude that Plaintiffs' claims in the instant action do not implicate the PREP Act, and therefore do not invoke federal question jurisdiction. Plaintiffs premise their state law causes of action on the allegations that Defendants failed to implement effective infection control policies throughout the facilities, failed to provide for Decedent's health and safety including in ways unrelated to COVID-19, and failed to staff their facilities properly and adequately. *See, e.g.,* Complaint ¶¶ 24-25, 70-71. Plaintiffs do not, as Magnolia contends, base their claims on Magnolia's "purchasing, administration, dispensing, prescribing, distribution and use of countermeasures, such as facemasks and other PPE and testing equipment to prevent or mitigate the spread of COVID-19." *See* Notice of Removal ¶ 10. As such, Defendants' alleged deficiencies, including their lack of effective infection control policies, do not constitute covered countermeasures under the PREP Act. *See Smith*, 2021 WL 1087284, at *4 (Plaintiffs' allegations "that Decedent's injuries were caused by Defendant's failure to implement an effective policy for isolating proven or suspected carriers of the coronavirus, and protecting its residents from exposure to COVID-19 . . . refer to policies and a failure to protect, not to any covered countermeasure, *i.e.*, drug, product, or device" (quotation omitted)); *Padilla*, 2021 WL 1549689, at *5 ("Defendant's policies regarding social distancing, use of medication for conditions unrelated to COVID-19, and reporting COVID-19 cases thus do not constitute covered countermeasures under the PREP Act.").

Additionally, the federal issue raised by Magnolia – PREP Act immunity – relates to Magnolia's *defense*, rather than the claims Plaintiffs allege. "As such, the federal issue is not necessarily raised." *Stone*, 2021 WL 1163572, at *7; *see also Padilla*, 2021 WL 1549689 at *6 ("immunity under the PREP Act is a defense, not a necessary aspect of Plaintiffs' state law claims"); *Thomas v. Century Villa Inc.*, No. 2:21-cv-03013-MCS-KS, 2021 WL 2400970, at *6 (C.D. Cal. June 10, 2021) ("the PREP Act merely provides [Defendant] with a potential affirmative defense to Plaintiffs' claims" and therefore does not confer federal question jurisdiction); *McCalebb*, 2021 WL 911951, at *6 ("Indeed, Defendant fails to distinguish between the scope of preemption required to confer federal jurisdiction, on the one hand, and the federal defense of preemption, on the other."). Magnolia cannot remove this action to federal court based on a federal defense, including the defense of preemption. *Franchise Tax Bd.*, 463 U.S. at 13-14.

The Court would not find the Fourth Amended Declaration persuasive, as it merely states

"there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of [*Grable*] in having a uniform interpretation of the PREP Act" without providing any legal support or analysis. *See* RJN Exh. 5 at 58. The Court would apply the same reasoning to the HHS OGC's January 8, 2021 Advisory Opinion, which indicates that the "Fourth Amendment to the Secretary's Declaration Supports the *Grable* Doctrine." *See* RJN Exh. 9 at 87-88. The Court therefore would not defer to the Fourth Amended Declaration and the January 8, 2021 Advisory Opinion and hold that *Grable* confers federal question jurisdiction over Plaintiffs' claims. *See Thomas*, 2021 WL 2400970, at *6 (Amendment Four and the Advisory Opinion do not persuade the court that the *Grable* doctrine grants federal jurisdiction over plaintiffs' state law claims); *McCalebb*, 2021 WL 911951, at *3 ("Neither the Secretary nor the OGC provides any significant analysis of *Grable*'s narrow holding and its two-pronged test. Deference to the Secretary's jurisdictional assertion is not due, and adherence to his conclusory assertion is not warranted.").

The Court thus would conclude it does not have federal question jurisdiction over Plaintiffs' claims.

### B. Federal Officer Jurisdiction

Finally, Magnolia argues the Court has jurisdiction over the case pursuant to 28 U.S.C. § 1442(a)(1), which permits removal of an action against "any officer (or any person acting under that officer) of the United States or of any agency thereof." *See* Notice of Removal at 19; 28 U.S.C. § 1442(a)(1). Magnolia states that it "was acting at the specific direction of federal authorities to address the on-going federal effort and national state of emergency to contain the COVID-19 pandemic, and prevent the spread of the virus." *See id.* ¶ 61. Specifically, Magnolia asserts it was acting "pursuant to the direct orders and comprehensive and detailed directives" issued by the Centers for Disease Control and Prevention, the Centers for Medicare and Medicaid Services, and the California Department of Public Health. *See id.*

The Court would find that federal officer jurisdiction does not apply in the instant case. While the federal officer removal statute must be "liberally construed" in favor of removal and the words "acting under" are broad, "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.'" *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147, 153 (2007). "And that is so even if the regulation is highly detailed and even if the private firm's

activities are highly supervised and monitored." *Id.* at 153. As such, 28 U.S.C. § 1442(a)(1) does not apply here, where Magnolia removed the case based on its compliance with federal orders and directives pertaining to COVID-19. *See Thomas*, 2021 WL 2400970, at *7; *McCalebb*, 2021 WL 911951, at *6-7; *Golbad*, 2021 WL 1753624, at *2; *Smith*, 2021 WL 1087284, at *8.

Accordingly, the Court would conclude that it lacks subject matter jurisdiction over Plaintiffs' claims.

## IV. Conclusion

Based on the foregoing discussion, the Court would remand the matter to state court for lack of subject matter jurisdiction. The Court would deny as moot Magnolia's motion to dismiss.